**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CASE NO. 2:24-CR-004(3)** |
| Plaintiff, | **JUDGE EDMUND A. SARGUS, JR.** |
| vs. | |
| **GERALD B. HARDEN,** | |
| Defendant. | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States submits this Sentencing Memorandum in connection with Gerald Harden's upcoming sentencing hearing. The Government agrees with the guideline calculations from the Presentence Investigation Report, which yield a sentencing range of 63–78 months of imprisonment. The Government respectfully requests that the Court impose a low-end term of 63 months of imprisonment, to be followed by a three-year term of supervised release.

**I.  BACKGROUND**

In 2023, ATF agents began investigating Gerald Harden's co-defendant, Buford Lowry, for suspected firearm trafficking. Undercover agent(s) met with Lowry several times in 2023. During two of those meetings, Lowry brokered firearm sales from Harden (a felon) to the agent(s). On August 22nd, Harden sold the agent(s) a Mossberg 500, 12-guage shotgun. Harden also gave the agent(s) 1.251 grams of methamphetamine. Then, on October 13th, Harden sold the agent(s) a German Makarov, 9mm pistol and a Glock .40 caliber pistol with an extended magazine.

On January 9, 2024, the grand jury returned an indictment that charged Harden with two counts of possession of a firearm by a convicted felon and one count of distribution of methamphetamine. On April 4, 2024, Harden pled guilty to two counts of possession of a firearm by a convicted felon pursuant to a plea agreement under Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure. The Government agreed to dismiss the remaining count at the time of sentencing.

In that plea agreement, the parties reached several sentencing stipulations, including a Base Offense Level of 20 given the extended magazine and Harden's status as a prohibited person; a 2-level enhancement given the possession of between three and seven firearms; and a 3-level reduction given his timely acceptance of responsibility. The plea agreement contained no stipulations as to Harden's criminal history scoring.

## II. The Applicable Guidelines Range

The Probation Officer calculated a Total Offense Level of 20, which mirrored the stipulations from the parties' plea agreement, and a Criminal History Category of VI, resulting in a guideline range of 63–78 months of imprisonment. Neither party has objected to those calculations, so the Court should adopt them for sentencing.

## III. Possible Departures from the Applicable Guidelines Range

The Probation Officer did not find any factors that would warrant a departure from the applicable guideline range. The Government agrees that no departures are warranted.

**IV.  Consideration of the Sentencing Factors from 18 U.S.C. § 3553(a)**

This case calls for a within-guideline sentence, albeit one at the low-end of the advisory range.

**A.  The Nature and Circumstances of the Offenses**

The nature and circumstances of the offenses are troubling.  Gerald Harden not only possessed three firearms—he illegally sold them to relative strangers.  And he sold one of those firearms in connection with providing a sampler of methamphetamine to the undercover agent(s) with an eye toward setting up future drug deals.  These aggravating factors suggest that a within-guideline sentence is appropriate.

**B.  The History and Characteristics of the Defendant**

Harden's history and characteristics point to the same result, particularly when the Court focuses on his lengthy criminal history.

Harden was thirty-four when he committed the instant offenses.  He was raised in a two-parent, middle-class household that was strict and rule-based.  Harden never completed high school, but he did obtain his GED prior to enlisting in the Army National Guard, from which he later received an honorable discharge.  He has never married and has a fifteen-year-old son.

Although his parents provided for his necessities and did not raise him in high-crime neighborhoods, he began drinking alcohol as a teenager.  This began the downward spiral towards drug addiction that ultimately led to this federal criminal case.

3

Harden began the routine use of narcotics around the age of fifteen. What started as a marijuana habit quickly escalated to the daily use of cocaine. This brought Harden to crack cocaine, and then to methamphetamine. Prior to his arrest in this case, Harden reports a nearly five-year run of daily fentanyl use. While he appears willing and eager to obtain treatment, his past providers of mandated treatment report hostility and disengagement.

Despite his young age, Harden has a lengthy criminal history that began at age twenty and continued nearly uninterrupted until his arrest in this case. Most of his prior convictions involve addiction-adjacent crimes such as theft, receipt of stolen property, and drug-and firearm-offenses. He does, however, have several more serious convictions, including an assault that involved repeatedly stomping on one victim's head, and beating another with a metal chair. Through this pattern, he amassed sixteen criminal history points, which places him in Criminal History Category VI – the highest category under the guidelines.

In addition, Harden has at least fifteen arrests that did not lead to convictions, he fled from police on several occasions (including his arrest here), he violated the terms of his probation in several cases, and he has an active warrant for a home robbery where Harden allegedly disarmed the home's security system before breaking in. All that to say, when considering Harden's genuine struggle with addiction, the Court should weigh that against both the duration and severity of his criminal history.

### C. Remaining Sentencing Factors

The Government has carefully considered the remaining sentencing factors and submits that none of them take this case or this defendant outside the "heartland" of firearm possession cases. The Government submits, however, that the Court should consider how staying within the guideline range will encourage Harden's respect for the law, deter him from future criminal conduct, protect those who might otherwise be endangered by his involvement with firearms and narcotics, and provide a meaningful opportunity to receive the treatment the PSR recommends. *See* 18 U.S.C. § 3553(a)(2)(A)-(D). All these factors weigh against a downward variance from the applicable guideline range.

### V. CONCLUSION

For these reasons, the United States respectfully requests that the Court impose a within-guideline sentence of 63 months of imprisonment, to be followed by a three-year term of supervised release.

Respectfully Submitted,

KENNETH L. PARKER
United States Attorney

s/Tyler J. Aagard
NOAH R. LITTON (0090479)
TYLER J. AAGARD (NC 54735)
Assistant United States Attorneys
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
Phone: (614) 469-5715
Email: Tyler.Aagard@usdoj.gov

5

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Sentencing Memorandum was served electronically on all counsel of record on this 24th day of July, 2024.

                                              s/Tyler J. Aagard
                                              NOAH R. LITTON (0090479)
                                              TYLER J. AAGARD (NC 54735)
                                              Assistant United States Attorneys